## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

WILLIE SCOTT,

                 Petitioner,              Case Number: 2:16-CV-10094
                                           HONORABLE GERALD E. ROSEN

v.

JEFFREY WOODS,

                 Respondent.

_____/

## OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS, DENYING A CERTIFICATE OF APPEALABILITY, AND DENYING PERMISSION TO APPEAL *IN FORMA PAUPERIS*

This matter is before the Court on Petitioner Willie Scott's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Petitioner challenges his convictions for kidnapping, three counts of first-degree criminal sexual conduct, and assault with intent to do great bodily harm less than murder on the grounds that his jury waiver was invalid, he was denied the effective assistance of trial and appellate counsel, insufficient evidence sustained his conviction, and the prosecutor committed misconduct. Respondent, through the Attorney General's Office, has filed an answer in opposition arguing that certain of the claims are procedurally defaulted and that all of the claims lack merit. Petitioner fails to show entitlement to habeas relief and the petition is denied.

## I.    Background

Petitioner's convictions arise from the assault of Joann B. on December 22, 2009, in Detroit, Michigan. Joann B. testified that she made money by moving things for

people.  On December 22, 2009, she received a call from a woman she knew in the neighborhood who asked her to move a stove and refrigerator.  Joann went to the woman's home, which she described as appearing vacant, and Petitioner opened the door. Petitioner held a gun to her head and pulled her into the home.  He asked her for money. When she did not give him money, he began beating her in the head with bricks.  Another man then entered the room carrying a shovel and asked for money.  Petitioner told the man to beat Joann until she came up with the money.  The second man beat Joann on the legs and arms with a shovel until one of her legs broke.  He also beat her with nunchucks. Petitioner beat her with a cane.  Joann testified that it felt as if the beatings continued for hours.

The woman who had called her to the home then arrived.  Petitioner ordered her to search Joann for the money.  The woman, whose name Joann could not remember, placed her hand inside Joann's vagina and rectum to see if she had hidden money there. Petitioner and the woman also placed sticks inside Joann's vagina and rectum.  Joann testified that Petitioner and the other man ejaculated on her.

Later, another man arrived and asked what was going on.  Joann testified that she was lying in puddles of blood.  Petitioner told the man that they were going to kill Joann. The man, who was later identified to be Carl Scott, said he was instead going to take her to the hospital.  As Carl Scott was carrying Joann out of the home, Petitioner threatened that if she told anyone what happened he would kill her and her family.  Carl Scott drove

2

Joann to a church, from which an ambulance took her to the hospital.  Joann suffered two broken legs, concussions, fractured ribs, and what she characterized as "female problems."  Tr., 2/4/11 at 29.

Petitioner testified in his defense.  He admitted that he lived in the home where Joann was attacked but claimed that he had been staying down the street with a friend at the time of the attack because his home was too cold.  He denied being in the home on the day of the attack.

Following a bench trial in Wayne County Circuit Court, Petitioner was convicted of  kidnapping, Mich. Comp. Laws § 750.349, three counts of first-degree criminal sexual conduct, Mich. Comp. Laws § 750.520b, and assault with intent to do great bodily harm less than murder, Mich. Comp. Laws § 750.84.  On March 18, 2011, he was sentenced as a fourth habitual offender to 22-1/2 to 35 years' imprisonment for each offense.

Petitioner filed an appeal of right in the Michigan Court of Appeals raising these claims: (i) invalid jury waiver; (ii) ineffective assistance of counsel; and (iii) findings of fact were clearly erroneous.  The Michigan Court of Appeals remanded the matter for an evidentiary hearing on Petitioner's ineffective assistance of counsel claim.  12/13/11 Order, ECF No. 7-14, Pg. ID 756.  Following a hearing, the trial court found that counsel was not ineffective.  *See* ECF No. 7-10.

Petitioner filed a supplemental brief in the Michigan Court of Appeals challenging the trial court's finding that counsel was not ineffective.  The Michigan Court of Appeals

3

affirmed Petitioner's convictions.  *People v. Scott*, No. 303671, 2012 WL 4800314 (Mich. Ct. App. Oct. 9, 2012).  Petitioner then filed an application for leave to appeal in the Michigan Supreme Court, raising the same claims raised in the Michigan Court of Appeals. The Michigan Supreme Court denied leave to appeal.  *People v. Scott*, 493 Mich. 953 (Mich. Apr. 1, 2013).

Petitioner returned to the trial court to file a motion for relief from judgment.  He raised these claims: (i) prosecutor failed to properly investigate the case; (ii) actual innocence; (iii) trial court lacked subject matter jurisdiction; and (iv) prosecutor maliciously obstructed justice by failing to call the doctor who examined the victim and counsel was ineffective for failing to call the doctor to testify.  The trial court denied the motion.  *See* 6/10/14 Opinion, ECF No. 7-13.  The Michigan Court of Appeals and Michigan Supreme Court both denied Petitioner leave to appeal the trial court's decision. *People v. Scott*, No. 323880 (Mich. Ct. App. Jan. 30, 2015), ECF No. 7-16; *People v. Scott*, 498 Mich. 919 (Mich. Nov. 24, 2015).

Petitioner then filed the pending habeas corpus petition. He raises these claims:

I.     Petitioner's jury waiver was invalid since he was not arraigned on the information and the court failed to establish that it was voluntarily and intelligently made in violation of due process of law and his right to a trial by jury, U.S. Const. VI, XIV; 1963 Const. art. 1, sec 17, 20.

II.    Petitioner Willie Scott was denied his constitutional right to effective assistance of counsel at trial.

III.   There was insufficient evidence to sustain the trial judge's findings of fact which were clearly erroneous and the guilty verdict for the kidnapping,

4

criminal sexual conduct and assault with intent to do great bodily harm charges must be set aside consistent with the Due Process Clause.

IV.    The prosecution failed to perform his duty to properly investigate the allegations brought forth against the petitioner, where if certain essential, critical information had been investigated, the petitioner's innocence would have been shown, preventing the prosecutor from convicting the petitioner based on the complainant's false testimony.

V.     Petitioner was denied the effective assistance of appellate counsel which establishes "cause" to excuse any procedural default for failure to raise his habeas issues on direct appeal.

## II.    Standard

Review of this case is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). Under the AEDPA, a state prisoner is entitled to a writ of habeas corpus only if he can show that the state court's adjudication of his claims –

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405 (2000). An "unreasonable application" occurs when "a state court decision unreasonably

applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id.* at 408.  "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 411.

The Supreme Court has explained that "[a] federal court's collateral review of a state-court decision must be consistent with the respect due state courts in our federal system." *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).  The "AEDPA thus imposes a 'highly deferential standard for evaluating state-court rulings,' and 'demands that state-court decisions be given the benefit of the doubt.'"  *Renico v. Lett*, 559 U.S. 766, 773 (2010) (quoting *Lindh v. Murphy*, 521 U.S. 320, 333 n. 7 (1997); *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (per curiam)).  "[A] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011).  The Supreme Court has emphasized "that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* at 102. Furthermore, pursuant to § 2254(d), "a habeas court must determine what arguments or theories supported or ... could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of th[e Supreme] Court." *Id.*

Although 28 U.S.C. § 2254(d), as amended by the AEDPA, does not completely

bar federal courts from relitigating claims that have previously been rejected in the state courts, it preserves the authority for a federal court to grant habeas relief only "in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with" Supreme Court precedent. *Id.* Indeed, "Section 2254(d) reflects the view that habeas corpus is a 'guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal." *Id.* (quoting *Jackson v. Virginia*, 443 U.S. 307, 332 n. 5 (1979)) (Stevens, J., concurring)). Therefore, in order to obtain habeas relief in federal court, a state prisoner is required to show that the state court's rejection of his claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 103, 131 S. Ct. at 786–87.

Additionally, a state court's factual determinations are entitled to a presumption of correctness on federal habeas review. See 28 U.S.C. § 2254(e)(1). A petitioner may rebut this presumption with clear and convincing evidence. *See Warren v. Smith*, 161 F.3d 358, 360-61 (6th Cir. 1998). Moreover, habeas review is "limited to the record that was before the state court." *Cullen v. Pinholster*, — U.S. —, 131 S.Ct. 1388, 1398 (2011).

## III. Discussion

### A. Jury Waiver Claim

Petitioner's first claim for habeas relief concerns his waiver of the right to a jury trial. He argues that the right was not validly waived because the waiver occurred before

7

arraignment in violation of Michigan Court Rule 6.402.  Respondent argues that this claim is procedurally defaulted.  "[F]ederal courts are not required to address a procedural-default issue before deciding against the petitioner on the merits."  *Hudson v. Jones*, 351 F.3d 212, 215 (6th Cir. 2003), citing *Lambrix v. Singletary*, 520 U.S. 518, 525 (1997).  "Judicial economy might counsel giving the [other] question priority, for example, if it were easily resolvable against the habeas petitioner, whereas the procedural-bar issue involved complicated issues of state law."  *Lambrix*, 520 U.S. at 525. In this case, the Court finds that the interests of judicial economy are best served by addressing the merits of this claim.

First, Petitioner's claim that the state court violated Michigan Court Rule 6.402 does not state a claim on which habeas relief may be granted.  A federal court may only grant habeas relief to a person who is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a).  Trial court errors in the application of state law or procedure are not cognizable as grounds for federal habeas relief.  *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991).  Petitioner is not entitled to federal habeas relief on a claimed error of state law.

The right to a trial by jury is a fundamental right, a cornerstone of the American system of criminal justice, which is enshrined in the Constitution.  *See Duncan v. Louisiana*, 391 U.S. 145 (1968).  It is a right that may be waived, if such waiver is knowing, voluntary and intelligent.  *Patton v. U.S.*, 281 U.S. 276, 312-13 (1930).  In *Lott*

8

*v. Coyle*, 261 F.3d 594, 615 (6th Cir.2001), the Sixth Circuit set forth the level of

knowledge a defendant must have to validly waive a right to a jury trial:

> A waiver may be voluntary, knowing, and intelligent if the defendant has a
> minimum amount of knowledge concerning his jury trial right and the
> mental capacity to understand the implications of the waiver of that right.
> *See* [*United States v. Martin*, 704 F.2d 267, 273 (6th Cir.1983)].  Although
> a defendant need not have a detailed, technical knowledge of this right, "[a]
> defendant is [deemed] sufficiently informed to make an intelligent waiver if
> he was aware that a jury is composed of 12 members of the community,
> [that] he may participate in the selection of the jurors, [that] the verdict of
> the jury must be unanimous, and that a judge alone will decide guilt or
> innocence should he waive his jury trial right." *Id.* at 273.  We did not,
> however, adopt a mandatory rule requiring trial courts to interrogate
> defendants prior to accepting a jury trial waiver, but instead, offered a
> "suggestion" that district courts personally inform defendants of the
> "benefits and burdens of jury trials on the record prior to accepting a
> proffered waiver." *Id.* at 274.

*Id.* at 615.

The Michigan Court of Appeals held that Petitioner's waiver was knowing and

voluntary.  *Scott,* 2012 WL 4800314, at *3.  On habeas review, the Court is "required to

give a high measure of deference to the state court's findings concerning the jury waiver,

which are supported by the contemporaneous record in the case."  *Spytma v. Howes*, 313

F.3d 363, 371 (6th Cir. 2002).  "[T]here is no federal constitutional requirement that a

court conduct an on-the-record colloquy with the defendant prior to accepting the jury

waiver."  *Id.* at 370.

The state court record shows that the trial court advised Petitioner of his

constitutional right to a jury trial on the record and ascertained that Petitioner was not

waiving that right pursuant to any threats or promises.  Although the colloquy was not complex, it is sufficient to establish a voluntary and intelligent waiver.  Therefore, Petitioner's claim is without merit and habeas relief is denied.

### B.      Ineffective Assistance of Counsel Claim

In his second claim for habeas relief, Petitioner argues that his trial attorney rendered ineffective assistance of counsel by failing to interview and call Carl Scott as a witness and failing to investigate the potential testimony of Dr. White and Nurse Pouget before agreeing to strike their testimony.

The standard for obtaining habeas corpus relief is "'difficult to meet.'"  *White v. Woodall*, — U.S. —, 134 S. Ct. 1697, 1702 (2014), *quoting Metrish v. Lancaster*, 569 U.S. —, —, 133 S. Ct. 1781, 1786 (2013).  In the context of an ineffective assistance of counsel claim under *Strickland v. Washington*, 466 U.S. 668 (1984), the standard is "all the more difficult" because "[t]he standards created by *Strickland* and § 2254(d) are both highly deferential and when the two apply in tandem, review is doubly so."  *Harrington*, 562 U.S. at 105 (internal citations and quotation marks omitted).  "[T]he question is not whether counsel's actions were reasonable"; but whether "there is any reasonable argument that counsel satisfied *Strickland's* deferential standard."  *Id.*

A violation of the Sixth Amendment right to effective assistance of counsel is established where an attorney's performance was deficient and the deficient performance prejudiced the defense.  *Strickland*, 466 U.S. at 687.  An attorney's performance is

10

deficient if "counsel's representation fell below an objective standard of reasonableness." *Id.* at 688. The defendant must show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* at 687. "Judicial scrutiny of counsel's performance must be highly deferential." *Id.* at 689. The Supreme Court has "declined to articulate specific guidelines for appropriate attorney conduct and instead [has] emphasized that the proper measure of attorney performance remains simply reasonableness under prevailing professional norms." *Wiggins v. Smith*, 539 U.S. 510, 521 (2003) (quoting *Strickland*, 466 U.S. at 688) (internal quotes omitted)).

An attorney's deficient performance is prejudicial if "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Strickland*, 466 U.S. at 687. The petitioner must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. Unless the petitioner demonstrates both deficient performance and prejudice, "it cannot be said that the conviction [or sentence] resulted from a breakdown in the adversary process that renders the result unreliable." *Id.* at 687.

Petitioner's first ineffective assistance of counsel claim concerns potential witness Carl Scott. During the preliminary examination, the victim testified that a man rescued her from the abuse. She identified a man then sitting in the gallery and later identified as

11

Carl Scott as the man who saved her. When the court and parties realized that Carl Scott was a potential witness, he was directed to leave the courtroom. Carl Scott did not testify at trial. On remand from the Michigan Court of Appeals, the trial Court held a hearing concerning counsel's alleged ineffectiveness on this issue. Carl Scott testified that after he was directed to leave the courtroom, he made his "getaway" from the courthouse. *See* ECF No. 10-10, Pg. ID 564. He acknowledged that both the prosecutor and defense counsel attempted to talk to him as he was leaving. He testified that Petitioner was not in the house when he saw people assaulting the victim, but that he never attempted to contact the prosecutor's office to tell them that.

Defense counsel testified that he first became aware of Carl Scott during the preliminary examination. After Scott was asked to leave the courtroom, defense counsel told Scott he would like to talk to him at some point. Prior to trial, defense counsel discussed witnesses with Petitioner. Defense counsel testified that he asked Petitioner about Scott as a potential witness. Petitioner told defense counsel "we don't need to worry about him. He is ... he's an alcoholic or something to that nature." *Id.* at Pg. ID 579. Defense counsel testified that he did not object when Scott was stricken from the prosecutor's witness list because, based upon his conversations with Petitioner, he believed Scott's testimony would not have been helpful to the defense. Police officer Robert Cane testified that he was the officer in charge of this case. He testified regarding his efforts to locate Scott prior to the trial. He left a subpoena at Scott's house, and twice

12

visited a soup kitchen Scott frequently visited, without success.

Following the evidentiary hearing, the trial court held that counsel was not ineffective.  The Michigan Court of Appeals affirmed the trial Court's holding.  The state court held that defense counsel reasonably relied on the prosecution's efforts to locate Scott and that counsel acted reasonably in not conducting further investigation based upon Petitioner's statement that defense counsel should not concern himself with Scott and that Scott was an alcoholic.  *Scott*, 2012 WL 4800314 at *4.

The Court finds the state court's decision was not contrary to or an unreasonable application of *Strickland*.  The record shows that Scott had a criminal history, that he was aware both that Petitioner was being charged in this case and that he was a potential witness.  Based upon the foregoing and counsel's conversation about Scott with Petitioner, it was reasonable for counsel to conclude that Scott did not want to be located and, even if he were located, that his testimony would not be favorable to the defense. *See Tanzi v. Secretary, Florida Department of Corrections*, 772 F.3d 644, 659 (11th Cir. 2014) (finding trial counsel's decision not to call a reluctant witness could reasonably be considered sound trial strategy).  Habeas relief is denied on this claim.

Second, Petitioner argues that his defense counsel was ineffective in failing to investigate Dr. White and Nurse Pouget before agreeing to strike them from testifying.[1]

---

[1]Respondent argues that this portion of Petitioner's ineffective assistance of counsel claim is procedurally defaulted.  The Court finds that judicial economy is best served by addressing the merits of this claim.  *See Lambrix*, 520 U.S. at 525.

He argues that a record of the medical examination performed by Dr. White hours after the assault showed that no vaginal or anal rape occurred. He also argues that Nurse Pouget indicated in a medical report that the victim was not raped. Neither of these arguments is supported by the record. The medical records cited by Petitioner indicate that the victim did not have severe physical trauma to her vagina or rectum. Petitioner concludes that the absence of this evidence proves that the assault did not occur in the manner described by the victim. He fails to provide an affidavit from Dr. White or Nurse Pouget or any other medical expert to support this conclusion. Petitioner's conclusory allegation that Dr. White or Nurse Pouget would have provided favorable testimony and that he was prejudiced by their absence is insufficient to establish a *Strickland* violation. Habeas relief is denied.

## C.    Sufficiency of the Evidence Claim

In his third claim for habeas corpus relief, Petitioner argues that the prosecutor presented insufficient evidence to sustain his convictions. Specifically, Petitioner argues that insufficient evidence was presented to prove the penetration element of first-degree criminal sexual conduct, and the asportation element of kidnapping.

"[T]he Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In re Winship*, 397 U.S. 358, 364 (1970). On direct review, review of a sufficiency of the evidence challenge must focus on whether "after viewing the

14

evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in original). In the habeas context, "[t]he *Jackson* standard must be applied 'with explicit reference to the substantive elements of the criminal offense as defined by state law.'" *Brown v. Palmer*, 441 F.3d 347, 351 (6th Cir. 2006) (quoting *Jackson*, 443 U.S. at 324 n.16).

"Two layers of deference apply to habeas claims challenging evidentiary sufficiency." *McGuire v. Ohio*, 619 F.3d 623, 631 (6th Cir. 2010), citing *Brown v. Konteh*, 567 F.3d 191, 204-05 (6th Cir. 2009). First, the Court "must determine whether, viewing the trial testimony and exhibits in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Brown*, 567 F.3d at 205, citing *Jackson,* 443 U.S. at 319. Second, if the Court were "to conclude that a rational trier of fact could not have found a petitioner guilty beyond a reasonable doubt, on habeas review, [the Court] must still defer to the state appellate court's sufficiency determination as long as it is not unreasonable." *Id.*

First, Petitioner argues that the testimony provided was insufficient to establish the penetration element of first-degree criminal sexual conduct. He argues that the victim's testimony was inconsistent and should not have been relied upon by the trial court. He also argues that the physical evidence did not support a finding of penetration. The Michigan Court of Appeals held that sufficient evidence supported Petitioner's

convictions for first-degree criminal sexual conduct.  Petitioner's argument rests upon the credibility of the victim.  He points to alleged inconsistencies in her testimony.  But, on habeas review, a federal court "does not reweigh the evidence or redetermine the credibility of the witnesses whose demeanor has been observed by the trial court." *Matthews v. Abramajtys*, 319 F.3d 780, 788 (6th Cir. 2003) (citing *Marshall v. Lonberger*, 459 U.S. 422, 434 (1983)).  "A reviewing court 'faced with a record of historical facts that supports conflicting inferences must presume – even if it does not affirmatively appear in the record – that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution.'"  *McDaniel v. Brown*, 558 U.S. 120, 133 (2010) (quoting *Jackson*, 443 U.S. at 326).  According the state court's findings of fact a presumption of correctness, the Michigan Court of Appeals' decision easily passes scrutiny under the deferential AEDPA standard.  The state court applied the correct constitutional test, relied on facts amply supported in the record, and did not unreasonably apply clearly established constitutional law.  Petitioner is not entitled to federal habeas corpus relief with respect to this claim.

Petitioner also argues that insufficient evidence was presented to satisfy the asportation element of kidnapping.   Under Michigan law, the elements of kidnapping as charged in this case are: (1) the defendant knowingly restrains another person with the intent to, (2) engage in criminal sexual penetration or criminal sexual contact with that person.  Mich. Comp. Laws § 750.349(1)(c) (prior amendment effective January 14,

16

2015).  The victim testified that Petitioner forced her to enter the home from which she was then not permitted to leave.  Under Michigan law, asportation may be found where the movement places the victim in a place of greater danger.  *People v. Barker*, 411 Mich. 291, 300 n.5 (Mich. 1981).  It was reasonable for the state court to conclude that the victim was in much graver danger inside the home than outside.  In addition, the victim was restrained inside the home and testified that she was the victim of beatings and sexual penetration.  This testimony, viewed in the light most favorable to the prosecution, is more than sufficient to establish beyond a reasonable doubt all of the elements of kidnapping.  Habeas relief is denied on this claim.

### D.    Prosecutorial Misconduct Claim

Petitioner's fourth habeas claim concerns alleged prosecutorial misconduct.  He argues that the prosecutor knowingly presented perjured testimony.  The trial court denied Petitioner's prosecutorial misconduct claim in denying his motion for relief from judgment.

A false-testimony claim falls under the *Brady* disclosure doctrine, which requires the government to disclose evidence favorable to a defendant if it is "material either to guilt or to punishment."  *Brady v. Maryland*, 373 U.S. 83, 87 (1963). The "contours of [a false-testimony] claim were predominantly shaped by two Supreme Court cases: *Napue v. Illinois*, 360 U.S. 264, 269-72, and *Giglio v. United States*, 405 U.S. 150, 153–54, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972)."  *Brooks v. Tenn.*, 626 F.3d 878, 894 (6th Cir. 2010).

17

The Sixth Circuit has developed a three-part test for determining if the prosecution has committed a *Brady-Napue-Giglio* violation:

> The knowing use of false or perjured testimony constitutes a denial of due process if there is any reasonable likelihood that the false testimony could have affected the judgment of the jury. In order to establish prosecutorial misconduct or denial of due process, the defendants must show (1) the statement was actually false; (2) the statement was material; and (3) the prosecution knew it was false. The burden is on the defendants to show that the testimony was actually perjured, and mere inconsistencies in testimony by government witnesses do not establish knowing use of false testimony.

*Id.* at 894-95 (*quoting Coe v. Bell*, 161 F.3d 320, 343 (6th Cir. 1998)).

In support of his claim, Petitioner points to medical records discussed above stating that no obvious trauma was observed to the victim's vagina or rectum. Petitioner argues that these medical records establish that the victim committed perjury when she described the vicious nature of the attack. A prosecutor is not required to ensure that prosecution witnesses' testimony be free from all confusion, inconsistency, and uncertainty. The state court's decision denying this claim was not an unreasonable application of Supreme Court precedent. Moreover, to the extent that Petitioner also claims that his trial attorney was ineffective in failing to object to the prosecutor's conduct, he fails to state a claim. Petitioner has not shown that the prosecutor knowingly presented perjured testimony. His attorney was therefore not ineffective in failing to object to the prosecutor's conduct.

### E.     Ineffective Assistance of Appellate Counsel Claim

Finally, Petitioner argues that his appellate counsel was ineffective in failing to

18

raise on direct appeal a claim that the victim was coerced by the lead detective to provide false testimony, and failing to present Petitioner's ineffective assistance of counsel claims regarding the consent instruction, the failure to call certain witnesses, and the failure to impeach witness McCall's testimony.

It is well-established that a criminal defendant does not have a constitutional right to have appellate counsel raise every non-frivolous issue on appeal.  *See Jones v. Barnes*, 463 U.S. 745, 751 (1983). In fact, "the process of winnowing out weaker arguments on appeal and focusing on those more likely to prevail ... is the hallmark of effective appellate advocacy." *O'Sullivan v. Boerckel*, 526 U.S. 838, 858 (1999) (quotation marks and citations omitted).

In denying Petitioner's application for leave to appeal from the trial court's denial of his motion for relief from judgment, the Michigan Court of Appeals denied Petitioner's ineffective assistance of appellate counsel claim.   Petitioner has failed to show that any of the claims he argues counsel should have raised were meritorious.  Therefore, he cannot show that he was prejudiced by counsel's failure to raise these claims on direct review.   "Appellate counsel cannot be found to be ineffective for 'failure to raise an issue that lacks merit.'"  *Shaneberger v. Jones*, 615 F.3d 448, 452 (6th Cir. 2010) (quoting *Greer v. Mitchell*, 264 F.3d 663, 676 (6th Cir.2001)).   Habeas relief is denied on this claim.

19

**IV.     Certificate of Appealability**

Federal Rule of Appellate Procedure 22 provides that an appeal may not proceed unless a certificate of appealability (COA) is issued under 28 U.S.C. § 2253.  Rule 11 of the Rules Governing Section 2254 Proceedings now requires that the Court "must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."  A COA may be issued "only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  The substantial showing threshold is satisfied when a petitioner demonstrates "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

In this case, the Court concludes that reasonable jurists would not debate the Court's conclusion that none of the claims in the habeas petition warrant relief. Therefore, the Court denies a certificate of appealability.

The Court will also deny permission to appeal *in forma pauperis* because any appeal of this decision could not be taken in good faith. 28 U.S.C. § 1915(a)(3).

**V.     Conclusion**

Accordingly, the Court 1) **DENIES WITH PREJUDICE** the petition for a writ of habeas corpus, 2) **DENIES** a certificate of appealability, and 3) **DENIES** permission to appeal *in forma pauperis*.

**SO ORDERED.**

s/Gerald E. Rosen
United States District Judge

Dated:  December 15, 2016

20

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on December 15, 2016, by electronic and/or ordinary mail.

s/Julie Owens
Case Manager, (313) 234-5135